## Case No. 1,851.

BREWERS' FIRE INS. CO. v. CLAUSON.

[3 Ins. Law J. 919.]

Circuit Court, S. D. New York. Jan. 20, 1874.

CORPORATIONS — SUBSCRIPTIONS FOR STOCK —CONDITIONS — PAROL EVIDENCE TO VARY WRITTEN CONTRACT — WITHDRAWAL OF SUBSCRIPTION — BAD FAITH—CONSIDERATION OF CONTRACT.

[1. Where a paper pledging the signers to pay the amounts put down by them as subscriptions to increase the capital stock of a corporation is circulated, and the subscriptions thereto procured, by an agent of the corporation, parol evidence in an action by the corporation to enforce payment is · inadmissible to prove that the subscriptions were made on the condition that they should be invalid unless a certain amount was pledged.]

[2. Parol evidence is admissible in such an action to prove such a condition if the paper was circulated among the subscribers by one of their number, and the signatures thereto were not contracts with the company until the condition was fulfilled.]

[3. Where a paper pledging the signers to take stock in a corporation is circulated for signatures by one of the signers, not an agent of the corporation, and under condition that, unless a certain amount is raised, the paper shall never be delivered to the corporation, and shall never become binding upon the signers, the subscriptions become binding contracts as soon as the specified amount is pledged, although the signers are thereafter erroneously informed, by the person circulating the paper, that the amount has not been secured, and thereupon attempt to cancel their subscriptions.]

[4. In such a case, if the specified amount had not been pledged at the time of the attempted withdrawal, but was thereafter secured, and if the attempted withdrawal was in bad faith, and for the purpose of enabling the subscribers to establish a rival company, the subscribers are bound.]

[5. Where additional capital stock is subscribed on condition that the corporation make a certain extension of their business, one who refuses to pay his subscription, and thereby prevents such extension, cannot be relieved from his liability on the ground that the failure to make the extension rendered the contract void for want of consideration.]

[At law. Action by the Brewers' Fire Insurance Company of America against Henry Clauson to enforce the payment of a part of defendant's subscription to plaintiff's stock. Verdict for plaintiff.]

Solomon & Burke, for plaintiff.

Beach & Brown, for defendant.

SHIPMAN, District Judge. Gentlemen of the Jury: This is an action to recover the sum of $2,500 and interest, being an installment of twenty-five per cent. called by the plaintiffs upon a stock subscription of $10,000, claimed to have been made by the respondent to the capital stock of the plaintiff, a fire insurance corporation. It is proved that the plaintiffs are a corporation, incorporated in accordance with the laws of the state of Wisconsin, and located in Milwaukee, in that state. It is admitted that the defendant, with sundry other persons, signed the subscription paper which has been produced, which upon its face purports to be a subscription by the defendant of the sum of $10,000 to the capital stock of the plaintiffs' corporation. It is proved that the plaintiff called for the installment of twenty-five per cent., of which call notice was given to the defendant, and demand made therefor. A prima facie case has thus been made by the plaintiff, by the proof of their due incorporation, of the defendant's signature to the paper read in your hearing, by the call for an installment of twenty-five per cent., by the notice to the defendant of that call, by a demand upon him for payment, and his noncompliance therewith.

Sundry defenses are interposed. The main one is that the subscription paper was never a perfected and operative contract between the subscribers and the plaintiffs; that prior to its circulation the proposal was made to a portion of the subscribers, who were brewers in the city of New York, that an endeavor should be made to increase the capital stock of the plaintiff's corporation, in the sum of $200,000, upon which 25 per cent. should be paid in cash, for the purpose of

enabling the plaintiff to comply with the statute of this state, which requires a cash capital of $200,000, on the part of insurance companies doing business here, and establishing an eastern department in this city; that it was informally agreed that an attempt should be made to obtain subscribers to said amount, and that until this result was attained, the paper should not be a perfected and operative instrument, deliverable to the company; and that the attempt not having succeeded, the project was abandoned with the knowledge and acquiescence of the solicitor of the subscriptions, and that the paper remained an uncompleted instrument in the hands of one of the subscribers.

It is conceded that no condition to the effect that the paper should not be binding was ever inserted in the paper or appended to any signature. And it is claimed by the plaintiffs that while it was a desire on their part that the sum of $200,000 should be obtained, that this was never a condition, expressed or implied, affecting the validity of the subscriptions, but that the paper was an ordinary subscription paper, containing a completed and perfected contract in itself, binding upon each party as soon as it was signed. And it is further claimed, that if any such condition was ever annexed by parol, the sum of $200,000 was in fact raised, and so that the project never could have been justly abandoned by the subscribers, but that any attempted abandonment was an attempt to avoid their own deliberate contract, and the retention of the paper was a wrong upon the company. And here comes the main question of law which has so frequently been discussed in your hearing.

It is impossible by parol to alter or vary or modify a written contract, and to annex conditions thereto not expressed in the written agreement. If this paper was put forth and signed by the parties who appended their names thereto as a present agreement with the corporation to pay money to them, then, although there was an unexpressed condition by which it was to be void, or to become void unless $200,000 was raised, it is valid and binding upon each signer. [To this defendant excepted.]

But if the paper was issued and signed, not as a contract or agreement with the defendant upon its execution, but to be kept and retained by the persons in whose hands it was, as an uncompleted contract, and the property of the subscribers, and not to be delivered to the plaintiffs until the result of $200,000 was reached, and then, and not until then, to be an operative instrument, and to be delivered to the plaintiffs, and before that result was attained it was, with the consent of the person who thus acted as agent of both parties, abandoned as a useless paper, and returned to the subscribers, then the defendant is not bound. And here the main controversy turns: You are carefully to discriminate and reject all testimony offered by the defendant, as not establishing his defense, which merely shows that the paper was, when signed, a contract to pay money, and to become thereafter void in the event that the parol condition was not complied with. Such testimony does not tend to prove his defense. [To this defendant excepted.]

Testimony supports his case, which tends to show that the paper was put into the hands of Jacobs and Katzenmayer for signature as a paper, and remained an experiment, and not the property of the plaintiffs, and not to be delivered to them until the $200,000 had been obtained from some source in the eastern states. In this view Katzenmayer and Jacobs were not simply the agents of the plaintiffs, but the agents of both parties, and they received each signature upon the agreement that the paper was not to be delivered until the entire sum was raised. Was the paper, as it passed from each subscriber, a contract with the company, to become thereafter void upon the happening of a condition resting in parol? If so, the defendant is bound. [To this defendant excepted.] Or was it as it passed from each subscriber an unperfected contract, to be delivered to the plaintiffs only when the whole sum should be raised, until then an inchoate and unperfected and undelivered agreement? If so, the defendant is not bound, provided the $200,000 was not raised.

If, when Jacobs and Katzenmayer took the paper, they took it as the agents of the plaintiffs only to obtain subscriptions, and each signature was a promise by the subscribers to the company to pay the money to them, then, although there was a parol condition that the promise should be thereafter void, such parol condition is ineffectual, and the defendant is bound, whether the entire sum was raised or not. [To this defendant excepted.] Or on the other hand, if when Jacobs and Katzenmayer took the paper, there was an agreement that until the same was raised, it should not be delivered to the company, but should remain in their hands in the nature of an escrow, to be returned to their subscribers, then if $200,000 was not raised, and the paper was prior to the time when $200,000 was obtained, with the consent of Katzenmayer, acting in good faith, returned to the subscribers, then the defendant is not bound. And, therefore, if under the suggestions that I have laid down, you find that Messrs. Jacobs and Katzenmayer, in obtaining the subscription of the defendant, acted as the agents of the plaintiffs alone, and not as agents of the subscribers, with no reference to them and no duties to be performed to them, then you should find for the plaintiffs. [Defendant excepted.]

To express the point more briefly, the question in this part of the case is, was this paper entrusted to Jacobs and Katzenmayer to be delivered to the plaintiffs only upon the

happening of a certain event, or was it delivered to them as a present contract with the company? [Defendant excepted.] If the former, then the paper is not binding if $200,000 was not raised, and before that event it was, with the consent of Katzenmayer, redelivered to the subscribers as an abandoned contract. This is the main question of fact which you are to consider—that is, "Was the paper entrusted to Jacobs?" etc. You are to scrutinize the testimony offered by the defendant, who takes the burden of proof. You are to look at and weigh the testimony of the plaintiffs. Upon this part of the case you are to scrutinize the testimony of the defendant's witnesses, and if you think that what was really meant at the time was that this paper was delivered to Katzenmayer by the defendant absolutely, and not conditionally, but was a present subscription for the company, then, although they say that it was not to be binding upon them until $200,000 was raised, yet the defense was not established, but such condition would be merely an unexpressed condition annexed to the subscriptions, and invalid. [Defendant excepted.]

The plaintiffs' witnesses swear, in substance, that they took it as a present contract with the company. If you find that the defendant's theory of this transaction is not established—that is, that Katzenmayer and Jacobs took the paper, not in the nature of an escrow, but that each signature was a present and existing contract, and that the company was thereafter to consider the subscriptions as void if this $200,000 was not raised, then you are to find for the plaintiffs and need go no further. [Defendant excepted.] If you find that the defendant's theory of the contract is made out by preponderance of proof, then you are to inquire whether at the time when the meeting was held, at which the paper was abandoned, the $200,000 had been raised for the purpose of increasing the capital so as to do business in New York and establishing an eastern department; for if the amount had so been raised, then according to the theory, the paper became a perfected instrument, and should have been therefore delivered to the plaintiffs. If the money had then been so raised, the subscription paper upon such result being obtained, forthwith belonged to the plaintiffs and should have been thereupon delivered to them. Whether delivered or not, it belonged to them.

Here you are to examine the testimony of the various witnesses, and you are first to ascertain when the project was abandoned by subscribers—whether at the first or second Fifty-Eighth street meeting. Having ascertained when it was abandoned, you are to find out whether it was then properly abandoned; for if the $200,000 had been raised, although Katzenmayer may have supposed that it was not, and told the meeting so, yet if that amount actually had been

raised, the subscribers are bound. [Defendant excepted.] For, as I have said, immediately upon its being raised, prior to the attempted abandonment, it belonged to the plaintiffs, and the subscribers could not abandon it. The contract was then a completed and perfected contract. Was then the $200,000 subscribed by bona fide subscriptions, when the subscribers undertook to abandon? The defendants say that at the first meeting in Fifty-Eighth street they ascertained, by the aid of Katzenmayer, that $200,000 was not obtained, and that they then, with his knowledge and consent, abandoned the unaccomplished agreement. On the other hand, the plaintiffs say that they had got the money, and that Katzenmayer was mistaken. The representations, declarations and assertions, verbal and written, of Katzenmayer, are introduced to show that if he made any such statement in the Fifty-Eighth street meeting, he erred, and misled the subscribers. And, also, it is attempted to be shown by the declarations, verbal and written, of Katzenmayer, that the abandonment was not because the $200,000 was not raised, but because the subscribers proposed to start an independent company of their own, and that this abandonment was entirely from another and different reason than the failure to obtain $200,000. If you find that the $200,000 was in fact raised at the east, for the purpose of so enlarging the company that it would do business in New York and establishing an eastern department, then the abandonment was unjustifiable. [Defendant excepted.] And in determining whether the plaintiffs had actually obtained the $200,000 subscription contemplated by the parties, as testified to by the defendant's witnesses, at the time when the defendant, and the other subscribers acting with him, undertook to abandon the enterprise, you may take into consideration not only the bona fide and genuine subscriptions found in the paper circulated in New York, but also the bona fide subscriptions made in Philadelphia and other places in Pennsylvania. [Defendant excepted.] If the Pennsylvania subscribers were actually bound in the amount set against their respective names at the time of the Fifty-Eighth street meeting, then those respective amounts are to be considered in the computation, although subsequently, and after the abandonment by the New York subscribers of their enterprise, the company at Milwaukee may have released some of the Pennsylvania subscribers from a portion of their subscriptions. [Defendant excepted.] If, at the time the attempted abandonment took place, the $200,000 had not been raised, and the determination to abandon was made in good faith by the subscribers, and with the knowledge and consent of Katzenmayer the paper was in good faith returned to one of the subscribers as a useless instrument, and was not delivered to the plaintiffs as a completed and perfected contract, then the de-

fendant is not liable. But if this subscription was abandoned by the defendant in bad faith, not because the $200,000 had not been raised, but because he and his co-subscribers desired to form another company, then you will find for the plaintiffs if you find that subsequently, and in a reasonable time after the abandonment, $200,000 was in fact raised for the purpose aforesaid. [Defendant excepted.] And in examining the evidence on this point you are at liberty to consider so much of the Pennsylvania list as was subscribed after the 20th, and the fact that the New York agency was established.

If you find the questions thus submitted to you in favor of the plaintiffs, then there was sufficient consideration for their promise, although a department of the east has never been created. [Defendant excepted.] The defendant and his associates cannot, by refusing to comply with their part of the agreement, and so preventing the plaintiffs from fulfilling their expressed intention, successfully claim that there was a failure of consideration. [Defendant excepted.] If you find for the plaintiffs you will find the sum of $2,500 and interest from the time of the demand, the 1st of November, 1871.

Defendant's counsel further requested the court to charge that if the erased subscriptions appearing upon the Pennsylvania list were erased or reduced by the consent of Blatz, the solicitor of the subscriptions, at the time before he left the place of subscription, that they are to be estimated at the reduced amount. The court so charged.

Verdict for plaintiffs. Case appealed to the United States supreme court.